| | |
|---|---|
| BEOCARE GROUP, INC., and BEOCARE,<br>INC.<br><br>      **Plaintiffs,**<br><br>**v.**<br><br>MICHAEL J. MORRISSEY (individually and<br>in his capacity as manager and/or managing<br>member of EM International, LLC, EM<br>Medical, LLC, MB Health Performance, LLC,<br>and MB Health, LLC); MEDICAL KNITTED<br>STRUCTURES, INC.; GARRETT COOPER,<br>(individually and in his capacity as Vice-<br>President of Medical Knitted Structures, Inc.);<br>EM INTERNATIONAL, LLC; EM MEDICAL,<br>LLC; SUZANNE SERL (individually and in her<br>capacity as manager of EM Medical, LLC); MB<br>HEALTH PERFORMANCE, LLC; MB<br>HEALTH, LLC; WILLIAM F. SMITH;<br>ALLIANCE LABS, LLC; AMY POWERS<br>VALENTINE (individually and in her capacity<br>as manager and member of Alliance Labs,<br>LLC); STEVEN VALENTINE;<br>PHARMACEUTICAL SALES SOLUTIONS,<br>LLC; ROBERT THOMAS (individually and in<br>his capacity as manager and member of<br>Pharmaceutical Sales Solutions, LLC)<br><br>      **Defendants.** | )<br>)<br>)<br>)<br>)<br>)          **ORDER**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

     **BEFORE THE COURT** are Defendant Alliance Labs, LLC's Motion to Dismiss for

Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2), (Doc. 78), and Defendant William F.

Smith's Motion to Dismiss for Lack of Personal Jurisdiction pursuant to FRCP 12(b)(2), (Doc.

91).

# I.  STATEMENT OF FACTS

This action began on June 24, 2014 when Plaintiffs BeoCare Group, Inc. and BeoCare, Inc. (collectively "BeoCare") filed their initial Complaint for Injunctive Relief, Declaratory Relief, and Damages against Defendant Michael J. Morrissey ("Morrissey") in the North Carolina General Court of Justice, Superior Court Division of Caldwell County. (Doc. 1, Ex. B). Morrissey subsequently removed the case to this Court on July 18, 2014. (Doc. 1).

On July 23, 2014, BeoCare filed an Amended Complaint for Injunctive Relief, Declaratory Relief, and Damages ("Complaint"). (Doc. 18). The Complaint included numerous additional defendants, including Alliance Labs, LLC ("Alliance") and William F. Smith ("Smith"). *Id.*

On September 15, 2014, Alliance filed a Motion to Dismiss for lack of personal jurisdiction pursuant to FRCP 12(b)(2), (Doc. 78), a Memorandum in Support of its Motion, (Doc. 79), and Amy Powers' Affidavit, (Doc. 79, Ex. 1). BeoCare filed a response, (Doc. 85), to which Alliance replied, (Doc. 90).

On November 3, 2014, Smith filed a Motion to Dismiss for lack of personal jurisdiction pursuant to FRCP 12(b)(2), (Doc. 91), a Memorandum in Support of his Motion, (Doc. 93), and Smith's Affidavit, (Doc. 92). BeoCare filed a response, (Doc. 98), to which Smith replied, (Doc. 105).

# II.  STANDARD OF REVIEW

"A plaintiff bears the burden of proving that the Court has personal jurisdiction over a defendant by a preponderance of the evidence." *Am. Auto. Ins. Co. v. Jacobs*, No. 1:11CV332, 2012 WL 5185617, at *4 (W.D.N.C. Sept. 27, 2012) (citing *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.,* 416 F.3d 290, 294 (4th Cir.2005)). However, "[w]hen a district

court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff [only] has the burden of making a prima facie showing in support of its assertion of [personal] jurisdiction." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). In determining whether BeoCare has met this burden, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Universal Leather*, 773 F.3d at 558 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).  If a court does not "conduct an evidentiary hearing, the court [is] required to assume the credibility of [Plaintiff's] version of the facts, and to construe any conflicting facts in the parties' affidavits and declarations in the light most favorable to [jurisdiction]." *Id.* at 560.

In order for a federal district court to exercise personal jurisdiction over a nonresident defendant, or a foreign corporation, such jurisdiction must be authorized by (1) the long-arm statute of the state in which the district court sits; and (2) the Due Process Clause of the Fourteenth Amendment. *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Universal Leather*, 773 F.3d at 558. "The North Carolina Supreme Court has held that N.C.G.S. § 1–75.4(1)(d) permits the exercise of personal jurisdiction over a defendant to the outer limits allowable under federal due process." *Universal Leather*, 773 F.3d at 558 (citing *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629, 630 (1977)). Further, both Alliance and Smith, the parties opposing jurisdiction, concede that "North Carolina's Long-Arm Statute asserts personal jurisdiction to the limit of the Due Process Clause." (Doc. 79, p. 6); (Doc. 93, p. 6). Since the Complaint asserts personal jurisdiction over Defendants under N.C.G.S. § 1–75.4(1)(d), the traditional two-step analysis collapses into one

question: is the Court's assertion of personal jurisdiction over Defendants consistent with the Due Process Clause of the Fourteenth Amendment? *See Universal Leather*, 773 F.3d at 558.

The Due Process Clause of the Fourteenth Amendment is satisfied for personal jurisdiction purposes if a defendant "purposefully availed itself of the privilege of conducting business in the forum state" by establishing sufficient "minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *see also International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The purpose of this analysis is to ensure that defendants have fair warning that their activities can subject them to the jurisdiction of a foreign state. *Burger King*, 471 U.S. at 472. Additionally, this requirement protects defendants from the "binding judgments of a forum with which [they have] no meaningful 'contacts, ties, or relations.'" *Id*. at 471-72 (quoting *International Shoe*, 326 U.S. at 316).

A court can find that the Due Process Clause of the Fourteenth Amendment is satisfied through either general or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Regardless of which type of jurisdiction is analyzed, "[f]airness is the touchstone of the jurisdictional inquiry, and the minimum contacts test is premised on the concept that a [defendant] that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).

"A court may assert general jurisdiction…when [the defendant's] affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *International Shoe*, 326 U.S., at 317).

BeoCare merely argues for jurisdictional discovery to explore whether Defendants have sufficient contacts in North Carolina to establish general jurisdiction. (Doc. 85, p. 12); (Doc. 98, p. 12). Therefore, BeoCare has not made a prima facie showing of general jurisdiction and the Court will initially limit its analysis to whether specific jurisdiction exists.

A court may assert specific jurisdiction over a non-resident defendant if the action arises out of the defendant's minimum contacts with the forum state. *Tire Eng'g*, 682 F.3d at 301. A court has specific jurisdiction over a non-resident defendant when that defendant's conduct relevant to the suit bears "such a connection with the forum state that it is fair for the defendant to defend itself in that state." *Id.* (quoting *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009)). The specific jurisdiction analysis does not require a specific number of contacts with the forum state to establish the requisite minimum contacts. *Id.* Instead, the Court considers the "qualitative nature of each of the defendant's connections to the forum state." *Id.* This test is so flexible that one act or contact within the forum state may be enough to satisfy the required "quality and nature" for minimum contacts under specific jurisdiction. *Id.* However, the contact in question must be one that the "'defendant *himself*' creates with the forum state." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The Fourth Circuit looks to a three factor test in deciding whether specific jurisdiction arises out of defendant's minimum contacts with the forum state: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Unspam Technologies, Inc. v. Chernuk*, 716 F.3d 322, 328 (4th Cir. 2013).

III.    Alliance Lab's Motion to Dismiss: BeoCare has made a prima facie showing that Alliance established minimum contacts with North Carolina via the conspiracy theory of personal jurisdiction and via Alliance's own actions targeted at the forum state

   A.    BeoCare has made a prima facie showing that Alliance purposefully availed itself of the privilege of conducting activities in North Carolina via the conspiracy theory of personal jurisdiction

"The first prong [of the specific jurisdiction test] articulates the minimum contacts requirement of constitutional due process[:] that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Although courts have noted some specific factors that may be considered to establish this first prong, the list is nonexclusive because "this requirement is not susceptible to mechanical application." *Id.* (citing *International Shoe*, 326 U.S. at 319; *Kulko v. Superior Court*, 436 U.S. 84, 92 (1978)). "The flexibility of these factors allows a court to focus its attention on the ultimate question of whether a defendant, through its actions, has subjected itself to the sovereignty of the State such that a court in the State can lawfully subject that defendant to a judgment." *Unspam Technologies*, 716 F.3d at 328 (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.Ct. 2780, 2789 (2011) (Kennedy, J., plurality opinion)).

   The Fourth Circuit recognizes that the "conspiracy theory of jurisdiction" can satisfy the first prong of the specific jurisdiction test. *Id.* at 329. Accordingly, a defendant has availed itself of the privilege of conducting activities in North Carolina if "the plaintiffs…make a plausible claim (1) that a conspiracy existed; (2) that the…defendant[] participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with [North Carolina] to subject that conspirator to jurisdiction in [North Carolina]." *Id.*; *see Lolavar*

*v. de Santibanes*, 430 F.3d 221, 229 (4th Cir.2005); *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir.1983)). "To satisfy these requirements, the plaintiffs [must] rely on more than 'bare allegations.'" *Id*. (quoting *Lolavar*, 430 F.3d at 229); *see also Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir.1997) ("[T]he plaintiff must plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.") (internal quotation marks omitted)). However, the Plaintiff's burden remains simply a prima facie showing that the elements of conspiracy theory of jurisdiction exist. *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983).

> i. BeoCare has made a prima facie showing that a conspiracy to defraud BeoCare existed

BeoCare alleges that Alliance purposefully availed itself of the privilege of conducting activities in North Carolina when "Alliance conspired with Mr. Morrissey to obtain samples of BeoCare products for the purposes of reverse engineering them." (Doc. 85, p 5). Alliance denies this allegation through its Motion to Dismiss, (Doc. 78), Reply, (Doc. 90, p. 5-8), and Amy Power's Affidavit, (Doc. 79, ex. 1). However, many of the facts from those documents conflict with the facts asserted by BeoCare in its Memorandum in Opposition to the Motion to Dismiss, (Doc. 85), Exhibits to that Memorandum, (Doc. 85, Exs. 1-2), and the Second Vanderbruggen Affidavit, (Doc. 39). Despite Alliance's refutations, BeoCare has made a prima facie showing that Alliance and Morrissey entered into a conspiracy to defraud BeoCare when the Court "draw[s] the most favorable inferences for the existence of jurisdiction" and "construe[s] any conflicting facts in the parties' affidavits and declarations in the light most favorable to [the Plaintiff]." *Universal Leather*, 773 F.3d at 558-60.

Alliance asserts it did not know about Morrissey's employment at BeoCare until reading the Complaint, however: Amy Powers ("Powers"), Alliance's sole member and manager, admits

in her affidavit that Alliance did receive e-mail chains containing Morrissey's BeoCare signature block. (Doc. 79, Ex. 1, ¶¶ 1, 27). Additionally, Powers spoke of Morrissey's "extensive experience" in the industry when contacting Alliance customers and distributors. (Doc. 39, Ex. N). This points to Power's knowledge of Morrissey's background and employment history. Morrissey also used his BeoCare signature block when sending e-mails to Alliance customers and distributors. (Doc. 39, Ex. B). This signature block is significantly large, has a link to Morrissey's BeoCare e-mail, has a link to BeoCare's website, and contains BeoCare's address in Hudson, North Carolina. BeoCare's submission of these e-mails and Peter Vanderbruggen's Affidavits corroborating the claims rise above bare allegations that Alliance knew Morrissey was employed in North Carolina at BeoCare, so this factual dispute must be resolved in the light most favorable to the Plaintiff. Therefore, for the purposes of this motion, the Court infers that Alliance knew of Morrissey's employment in North Carolina at BeoCare.

Alliance also asserts that it did not know where their samples of Flamozil and Tixocin originated. (Doc. 79, Ex. 1, ¶ 23). However, Alliance did know the products were not available in the United States, (Doc. 79, Ex. 1, ¶ 22), and that Morrissey worked for BeoCare. Additionally, on May 27, 2014, Ms. Powers sent Morrissey an e-mail stating "[t]he sample arrived today." (Doc. 39, Ex. O). Then, four days later, on May 31, 2014, Ms. Powers sent another e-mail, with Morrissey as the only direct recipient, asking "is there any chance you could send us several additional bottles?" (Doc. 39, Ex. P). This points to Morrissey's direct involvement in sending a shipment of medical samples to Alliance and Alliance's solicitation of Morrissey to send additional samples. BeoCare's submission of these e-mails and Peter Vanderbruggen's Affidavits corroborating the claims rise above bare allegations that Alliance knew the samples of Flamozil came from Morrissey while he worked at BeoCare, so this factual

dispute must be resolved in the light most favorable to the Plaintiff. Therefore, for the purposes of this motion, the Court infers that Alliance knew BeoCare was the owner of Flamozil and the samples came from Morrissey while he worked at BeoCare.

Finally, Alliance denies that a conspiracy to reverse engineer Tixocin and Flamozil existed between Alliance and Morrissey. However, the exhibits attached to Vanderbruggen's Second Affidavit show multiple e-mail exchanges between Morrissey and Powers discussing samples of Tixocin and Flamozil sent to Alliance for a "reverse report." (Doc. 39, Exs. O-P). Additionally, although Tixocin and Flamozil can be shipped into the United States from Europe, the e-mail exchanges highlight that Alliance wanted to get their samples of the drugs from Morrissey and Thomas because "it might be faster" than its overseas source. *Id*. The pleadings, affidavits, and exhibits all combine to establish more than bare allegations that Alliance and Morrissey entered into a conspiracy to defraud BeoCare by reverse engineering the drugs Tixocin and Flamozil, so this factual dispute must be resolved in the light most favorable to the Plaintiff. Therefore, BeoCare has made a prima facie showing that a conspiracy existed between Alliance and Morrissey to defraud BeoCare by reverse engineering the drugs Tixocin and Flamozil.

> ii.     Plaintiff has made a prima facie showing that Alliance participated in the conspiracy to defraud BeoCare

For the reasons mentioned in the previous section, the Complaint, the Plaintiff's Opposition to the Motion to Dismiss, the Vanderbruggen Affidavits, and the Exhibits all combine to establish more than bare allegations that Alliance participated in the conspiracy between Alliance and Morrissey to defraud BeoCare by reverse engineering the drugs Tixocin and Flamozil. Therefore, BeoCare has made a prima facie showing that Alliance participated in

the conspiracy between Alliance and Morrissey to defraud BeoCare by reverse engineering the drugs Tixocin and Flamozil.

> iii. Plaintiff has made a prima facie showing that Morrissey's activities in furtherance of the conspiracy had sufficient contacts with North Carolina to subject Morrissey to the jurisdiction of North Carolina Courts through specific jurisdiction

The factual dispute between the parties primarily revolves around the existence of a conspiracy to defraud BeoCare, not whether Morrissey's activities in furtherance of the conspiracy had sufficient contacts with North Carolina to subject Morrissey to the Court's jurisdiction. However, this factor is easily established. Although Morrissey is a Rhode Island resident, Morrissey traveled to BeoCare's headquarters in Hudson, North Carolina one or two times a month and attended weekly business meetings for the company in North Carolina in person or by teleconference, as was established in Vanderbruggen's first affidavit. (Doc. 2, ¶ 23). This assertion is not contested by Alliance and clearly connects Morrissey to the forum state. However, Beocare must show more than just Morrissey's connection to the forum state. BeoCare must also show that Morrissey's activities in furtherance of the conspiracy subject him to North Carolina jurisdiction.

To establish that Morrissey's activities in furtherance of the conspiracy subject him to North Carolina jurisdiction the Court looks to the e-mail exchanges between Morrissey, Thomas, and Powers beginning on June 20 and ending on June 23, 2014. (Doc. 39, Ex. O). On June 20, Powers asks Thomas and Morrissey whether they can locate and send Alliance additional samples of Tixocin, presumably in furtherance of the conspiracy established in Section (III)(A)(i) of this opinion. *Id*. On June 23, Morrissey replied to this e-mail chain stating that he would be at the office in North Carolina tomorrow, and would get the samples then. *Id*. Morrissey was fired by BeoCare the next day so he never took these samples, however, this e-

mail chain shows more than bare allegations that Morrissey's activities in furtherance of the

conspiracy to defraud BeoCare had sufficient contacts with North Carolina to subject Morrissey

to the jurisdiction of North Carolina Courts, so this factual dispute must be resolved in the light

most favorable to the Plaintiff. Therefore, BeoCare has made a prima facie showing that

Morrissey's activities in furtherance of the conspiracy had sufficient contacts with North

Carolina to subject Morrissey to the jurisdiction of North Carolina Courts. Furthermore, this

shows that Alliance purposefully availed itself of the privilege of conducting activities in North

Carolina via the conspiracy theory of personal jurisdiction.

> B.    Even if BeoCare has not made a prima facie showing of the conspiracy theory of
> personal jurisdiction, BeoCare has made a prima facie showing that Alliance
> purposefully availed itself of the privilege of conducting activities in North
> Carolina via Alliance's own actions targeted at the forum state

Even if a defendant does not have a physical presence in the forum state, minimum

contacts can be established through "repeatedly reaching into [North Carolina] to transact

business with [a] plaintiff, invoking the benefits and protections of [North Carolina] law." *Tire

Eng'g*, 682 F.3d at 305 (quoting *CFA Inst.*, 551 F.3d at 295). At this point in the litigation, the

factual disputes must be resolved in the light most favorable to the Plaintiff. With that in mind,

the preceding sections of this opinion tend to show that Alliance knew BeoCare was a North

Carolina corporation, Morrissey was a vice president at BeoCare, and Morrissey often worked

for BeoCare in North Carolina. Further, Alliance repeatedly reached out to Morrissey in his

capacity as a North Carolina BeoCare employee when Powers asked him, through multiple e-

mail chains, to send Alliance additional samples of Flamozil and Tixocin, two products for

which BeoCare holds exclusive distributorship and licensing agreements with the manufacturer.

Given the reach of this contact with North Carolina, Alliance's conduct relevant to the suit bears

"such a connection with the forum state that it is fair for the defendant to defend itself in that

state." *Tire Eng'g*, 682 F.3d at 301 (quoting *CFA Inst.*, 551 F.3d 292). Therefore, Alliance purposefully availed itself of the privilege of conducting activities in North Carolina via Alliance's own actions targeted at the forum state.

C.     BeoCare has made a prima facie showing that the claims against Alliance arise out of Alliance's own activities directed at North Carolina

This portion of the specific jurisdiction analysis is not in question. BeoCare's Complaint and Motions lay out that Alliance's actions directed at North Carolina, whether directly or through Morrissey via the conspiracy theory of personal jurisdiction, are the very basis of Alliance's alleged tortious contract interference, misappropriation of trade secrets, civil conversion, unfair and deceptive trade practices, and civil conspiracy. (Doc. 18, ¶ 27). Therefore, BeoCare has made a prima facie showing that the claims against Alliance arise out of Alliance's own activities directed at North Carolina.

D.     BeoCare has made a prima facie showing that the exercise of personal jurisdiction by North Carolina Courts against Alliance is constitutionally reasonable

"This prong of the analysis 'ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to [its] opponent.'" *Tire Eng'g*, 682 F.3d at 303 (quoting *CFA Inst.*, 551 F.3d at 295). In determining whether the exercise of personal jurisdiction over a defendant is constitutionally reasonable, the defendant's contacts are "considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *International Shoe*, 326 U.S. at 320). These factors include "(a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies." *Marx Indus., Inc. v.*

*Chestnut Ridge Foam, Inc.*, 903 F. Supp. 2d 358, 365 (W.D.N.C. 2012) (citing *Burger King*, 471 U.S. at 475).

        i.      Any burden on Alliance from defending a case in North Carolina is relatively small

"[F]oreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (internal quotation omitted). However, "the inequity of being haled into a foreign forum is mitigated if it was reasonably foreseeable that the defendant could be subject to suit there." *CFA Inst.*, 551 F.3d at 296 (citing *Shaffer v. Heitner*, 433 U.S. 186, 218 (Stevens, J., concurring in judgment)). In this case, when the facts are viewed in the light most favorable to BeoCare, Alliance performed acts in furtherance of its conspiracy with Morrissey such that it was foreseeable that Alliance could be subjected to a lawsuit in North Carolina. Furthermore, the ability of Alliance to hire local counsel in North Carolina shows the company's ability to contest a lawsuit in this forum. *Marx Indus.*, 903 F. Supp. 2d at 366 (citing *CFA Inst.*, 551 F3d at 296).

The ability of Alliance to foresee a lawsuit in North Carolina and the relatively small burden of defending this case in North Carolina weighs in favor of allowing personal jurisdiction. However, even if the Court were to decide that this factor weighed in favor of dismissal, the defendant's burden of litigating in a distant forum "is not so great as to make unfair on that basis alone the exercise of jurisdiction." *First Am. First, Inc. v. Nat'l Ass'n of Bank Women*, 802 F.2d 1511, 1518 (4th Cir. 1986) (citing *McGee v. Int'l Life Ins. Co,* 355 U.S. 220, 224; *Burger King,* 471 U.S. at 484).

        ii.     North Carolina has a significant interest in resolving this dispute

Each state "has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 328

N.C. 361, 367 (citing *Burger King*, 471 U.S. 478-79). Additionally, each state has an interest in resolving the grievances of its businesses, particularly when those grievance arise from issues of that state's laws. *CFA Inst.*, 551 F.3d at 296. This case involves a North Carolina business, BeoCare, filing a grievance against an out-of-state actor, Alliance, involving issues of North Carolina law, the Trade Secrets Protection Act (N.C. Gen. Stat. §§ 66-152) and the Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. §§ 75-1.1). (Doc. 18). Therefore, North Carolina's significant interest in obtaining relief in North Carolina courts weighs in favor of allowing personal jurisdiction over Alliance.

iii.     BeoCare has a significant interest in obtaining relief in North Carolina

BeoCare has a significant interest in obtaining relief in North Carolina because the alleged conspiracy between Alliance and Morrissey both took place and caused harm in North Carolina. (Doc. 18, ¶ 27), (Doc. 39, ¶ 47). BeoCare has also expressed a strong interest in redressing these harms in North Carolina through its Complaint, (Doc. 18), and subsequent filings, (Doc. 85, p. 11). Therefore, BeoCare's significant interest in obtaining relief in North Carolina weighs in favor of allowing personal jurisdiction over Alliance.

iv.     Resolving this dispute in North Carolina promotes judicial efficiency

Aside from Alliance, BeoCare has named thirteen other individuals and entities in this lawsuit. Although the initial defendant, Morrissey, has since settled, most defendants, other than Alliance and Smith, have entered appearances in this Court.

BeoCare has alleged claims against Alliance for tortious interference with Morrissey's employment contract, misappropriation of BeoCare's trade secrets, civil conversion, and unfair and deceptive trade practices. (Doc. 18, ¶ 292-331). BeoCare has alleged the same claims against the other defendants in this lawsuit. *Id.* Additionally, BeoCare has alleged a breach of contract

claim against PSS, (Doc. 18, ¶ 286-291), with whom Alliance signed a contract in order to arrange Alliance's relationship with Morrissey. (Powers Aff. ¶¶ 15-18).

All of BeoCare's alleged claims against Alliance have also been alleged against the other defendants. These claims arise out of similar conduct by each defendant. (Doc. 18). Since the same claims and similar acts will be examined for each defendant, judicial efficiency favors the exercise of jurisdiction over all defendants in one lawsuit adjudicated by one court. Alliance has not suggested an alternative forum that would better promote judicial efficiency. (Docs. 78, 90). Therefore, resolving this dispute in North Carolina, where the other parties have filed appearances, will promote judicial efficiency and weighs in favor of allowing personal jurisdiction over Alliance.

> v.  No fundamental substantive social policy is harmed by resolving this dispute in North Carolina

There are minimal, if any, fundamental substantive social policies at risk of being harmed by resolving this dispute in North Carolina because the alleged activities involved in the conspiracy between Alliance and Morrissey primarily took place and had an effect in North Carolina. Additionally, Alliance does not elaborate on any fundamental substantive social policies at risk of being harmed by resolving this dispute in North Carolina in either its Motion to Dismiss, (Doc. 78, p. 12-14), or its Reply in Support of the Motion to Dismiss, (Doc. 90, p. 9-10). Therefore, the lack of harm to a fundamental substantive social policy by resolving this dispute in North Carolina weighs in favor of allowing personal jurisdiction over Alliance.

Most, if not all, of the factors highlighted by the Supreme Court in *Burger King* weigh in favor of the Court asserting personal jurisdiction over Alliance. Accordingly, the Court's jurisdiction does comport with fair play and substantial justice. Therefore, the Court's personal jurisdiction over Alliance is constitutionally reasonable.

BeoCare has made a prima facie showing that: (1) Alliance established minimum contacts with North Carolina via the conspiracy theory of personal jurisdiction; (2) BeoCare's claims against Alliance arise out of Alliance's own activities directed at North Carolina in furtherance of this conspiracy; and (3) the exercise of personal jurisdiction by North Carolina Courts against Alliance is constitutionally reasonable. Therefore, BeoCare has made a prima facie showing that North Carolina Courts have specific jurisdiction over Alliance and Alliance's Motion to Dismiss should be denied.

IV.     Smith's Motion to Dismiss: BeoCare has not made a prima facie showing that Smith established minimum contacts with North Carolina via the conspiracy theory of personal jurisdiction nor via Smith's own actions targeted at the forum state

      A.     BeoCare has not made a prima facie showing that Smith purposefully availed himself of the privilege of conducting activities in North Carolina via the conspiracy theory of personal jurisdiction

Although BeoCare does not directly posit that North Carolina Courts have jurisdiction over Smith via the conspiracy theory of personal jurisdiction, BeoCare alleged in its Complaint that Smith participated in a civil conspiracy. Therefore the conspiracy theory of personal jurisdiction will be addressed. North Carolina Courts do not have personal jurisdiction over Smith via the conspiracy theory of jurisdiction because BeoCare has failed to make a prima facie showing that a conspiracy existed or that Smith entered into that conspiracy with Morrissey.

         i.     The alleged conduct with Easytech does not establish a prima facie showing of a conspiracy

BeoCare's Memorandum in Opposition to Smith's Motion to Dismiss alleges that Smith and Morrissey tried to enter into an agreement with a firm known as Easytech on behalf of BeoCare. (Doc. 98, p. 7). This allegation of a conspiracy, however, does not hold up, even when the attached exhibits are take in the light most favorable to BeoCare.

BeoCare's allegation that Smith and Morrissey attempted to enter into an agreement with Easytech on behalf of BeoCare stems from an e-mail sent from Ms. Gwendolyn Lupi ("Lupi"), an Easytech employee, to Morrissey on June 25, 2012. (Doc. 98, Ex. B). Lupi sent Morrissey a draft of Easytech's "standard agreement" in this e-mail. *Id*. BeoCare is mentioned as a party in the agreement, leading the company to assume Smith and Morrissey tried to enter into this agreement on behalf of BeoCare. However, Lupi clearly states that this is a draft agreement and tells Morrissey to replace all references to BeoCare in the agreement with the name of his company.[1] *Id*. A later e-mail response from Morrissey to Lupi shows that Morrissey did make these changes and entered into the agreement with Easytech on behalf of his company, MB Health Performance. (Doc. 3, Ex. K).[2] Additionally, BeoCare acknowledges that Lupi's e-mail to Morrissey only "shows her understanding of Mr. Morrissey's affiliation with BeoCare," (Doc. 98, p. 6), but BeoCare does not claim this act proves a conspiracy to enter into an agreement on behalf of BeoCare.

BeoCare alleges that Lupi contacted potential purchasers of the Delta system by representing BeoCare as Easytech's partner in the US market as part of the alleged conspiracy. (Doc. 98, p. 6). This allegation stems from an e-mail Lupi sent to George Langlitz, a potential purchaser, on October 16, 2013. (Doc. 98, Ex. D). Reading this e-mail in the light most favorable to the plaintiff shows that Lupi represented Morrissey as a BeoCare employee who was Easytech's partner in the US market. However, there is no evidence that Morrissey told Lupi to represent him in that light in furtherance of some conspiracy against BeoCare. Furthermore, this was an accurate representation of Morrissey, since he was working at BeoCare at this time and

---

[1] "I have mentioned Beocare but I am sure that your company will have a different name so please, just put the correct name in the agreement."
[2] "Hi Gwendy, Bill and I are MB Health Performance. That is the new contract that was revised when we set up our company."

he was Easytech's US partner for selling the Delta systems. Therefore, even when this e-mail is read in the light most favorable to the plaintiff, Lupi's mention of Morrissey as Easytech's US partner does not make a prima facie showing that there was a conspiracy by Morrissey to falsely enter into an agreement on behalf of BeoCare or to falsely sell Delta systems under BeoCare's name.

BeoCare also alleges that Lupi continued to believe that BeoCare was involved in the Delta system until 2014 and that Morrissey entered into an agreement that obligated BeoCare to pay Easytech for shipping costs. (Doc. 98, p. 7). This allegation stems from an e-mail sent by Lupi to Morrissey on March 31, 2014. (Doc. 3, Ex. K). However, a full reading of the e-mail exchange shows that Morrissey quickly corrected Lupi's mistake by reminding Lupi that he revised the contract and entered it on behalf of his company MB Health Performance, not BeoCare. *Id*. Shortly after this correction Lupi acknowledged her mistake and apologized. *Id*. This shows that Morrissey did not enter into an agreement with Easytech on behalf of BeoCare, but instead entered into an agreement with Easytech on behalf of MB Health Performance. Therefore, BeoCare has failed to make a prima facie showing that a conspiracy existed to falsely enter into an agreement with Easytech on behalf of BeoCare.

    ii.    Even if the alleged conduct did establish a conspiracy, BeoCare has failed to make a prima facie showing that Smith was involved in that conspiracy

Although Lupi and Smith had many e-mail interactions, the only e-mail connecting Smith to BeoCare took place when Morrissey forwarded Smith Lupi's e-mail from June 25, 2012. (Doc. 98, Ex. B). However, as was established in Section (IV)(a)(i) of this opinion, Lupi was aware at that time that Morrissey and Smith were not representing themselves as BeoCare. *Id*. Additionally, Lupi encouraged Morrissey and Smith to modify the agreement in order to reflect their new company's name. *Id*. Finally, a later e-mail exchange from 2014, (Doc. 3, Ex. K),

established that both of these parties knew Morrissey and Smith entered into the agreement with Easytech on behalf of MB Health Solutions, not BeoCare. Therefore, even if the alleged conduct by Morrissey did establish a conspiracy to falsely enter into a contract with Easytech on behalf of BeoCare, BeoCare has failed to make a prima facie showing that Smith was involved in that conspiracy.

B.     BeoCare has not made a prima facie showing that Smith purposefully availed himself of the privilege of conducting activities in North Carolina via his own actions targeted at the forum state

i.     Smith's alleged conduct with Easytech does not establish a prima facie showing that Smith purposefully availed himself of the privilege of conducting activities in North Carolina

The only alleged activity connecting Smith's conduct with Easytech to the state of North Carolina is the transportation of the Delta device from Italy, through Charlotte, to Morrissey's address in Rhode Island. Although BeoCare alleges that Smith, alongside Morrissey, hired a customs agent in North Carolina to process the Delta device into the country, BeoCare has not substantiated these allegations. All of the shipping records submitted to the Court show that Morrissey, not Smith, was involved in the processing of the Delta device through Charlotte. (Doc. 98, Ex. C). Additionally, Smith's name is not found on any of the paperwork submitted involving the payment of a customs broker in Charlotte. *Id*. Furthermore, the device was shipped to Morrissey's address in Rhode Island, not Smith's. *Id*.

"The allegations of the complaint, unless controverted by opposing affidavits, must be taken as true." *Capstar Corp. v. Pristine Indus., Inc.*, 768 F. Supp. 518, 522 (W.D.N.C. 1991). However, in this case Smith does controvert the allegations from the Complaint connecting him to the state of North Carolina in his sworn affidavit to this court. (Doc. 92). Smith denies having engaged in business or solicitation activities within North Carolina, (*Id*. ¶¶ 7-8), and denies

having others provide solicitation or service activities in North Carolina on his behalf, (*Id.* ¶ 10). Finally, Smith denied having Morrissey act as his agent, (*Id.* ¶ 20), employee, (*Id.* ¶ 26), or on his behalf, (*Id.* ¶ 25).

Since Smith has denied the alleged connections to the state of North Carolina, BeoCare must provide some evidence beyond the Complaint to establish a prima facie case that Smith purposefully availed himself of the privilege of conducting activities in North Carolina. Although the e-mail evidence attached to BeoCare's Motion, (Doc. 98), shows that Smith had a connection to the Delta device while in Rhode Island, there is no evidence, even with the disputed facts taken in the light most favorable to BeoCare, to support the allegation that Smith was involved with the shipment and processing of the Delta device through Charlotte. Therefore Smith's alleged conduct with Easytech does not establish a prima facie showing that Smith purposefully availed himself of the privilege of conducting activities in North Carolina.

Moreover, the transportation of the Delta device to Charlotte was only temporary and the supporting documentation show that the product was never intended to stay in North Carolina. This, by itself, is too tangential to justify hailing a non-resident into North Carolina. Further, it is apparent that the claims Beocare is making do not arise out of this activity in the North Carolina.

Alternatively, BeoCare argues this Court has jurisdiction over Smith because his actions with Easytech had a harmful effect upon BeoCare at its headquarters in Hudson, North Carolina. (Doc. 18, ¶ 27). Under the "effects test," the Fourth Circuit requires that "the plaintiff must establish that specific jurisdiction is proper by showing that (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious

activity." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 280 (4th Cir. 2009)

(quoting *Carefirst,* 334 F.3d at 398 n. 7). "[A]lthough the place the plaintiff feels the alleged

injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the

defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." *Id.* at

280-81 (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997)). The

Court requires these additional contacts of the defendant with the forum state on top of the

"effects test" because "the plaintiff always feels the impact of the harm [in their home state.]"

*ESAB Grp.*, 126 F.3d 626.

BeoCare has failed to make a prima facie showing that Smith's alleged connection with

the Delta System shipment through Charlotte established a contact with the state of North

Carolina. BeoCare has also failed to show any other connection between Smith and North

Carolina. Consequently, BeoCare cannot establish specific jurisdiction over Smith solely based

upon the effects that his allegedly tortious conduct had upon the company in North Carolina

because must any effects "must ultimately be accompanied by the defendant's own contacts."

Therefore, BeoCare has failed to make a prima facie showing that Smith purposefully availed

himself of the privilege of conducting activities in North Carolina through his alleged conduct

with Easytech.

ii.     Smith's alleged conduct with Faveo does not establish a prima facie
        showing that Smith purposefully availed himself of the privilege of
        conducting activities in North Carolina

None of Smith's alleged conduct with Faveo from the Complaint is shown to have taken

place in North Carolina. (Doc. 18, ¶¶ 187-209). There is no evidence that the e-mail exchanges

between Smith and Faveo representatives took place in North Carolina, nor did those e-mails

ever mention the forum state. Although these exchanges were allegedly forwarded by Smith to

Morrissey, there is no evidence that those e-mails were forwarded into North Carolina since Morrissey used his personal e-mail address and resides in Rhode Island.

BeoCare alleges that Smith's conduct with Faveo and Morrissey was intentionally tortious and caused a harmful effect upon the company at their headquarters in Hudson, North Carolina. (Doc. 18, ¶ 27). Therefore, BeoCare must make a prima facie showing of the three "effects test" factors accompanied by the defendant's own contacts with the forum state for specific jurisdiction over Smith to be upheld. *Consulting Engineers Corp.*, 561 F.3d at 280-81. Therefore BeoCare has failed to make a prima facie showing that Smith purposefully availed himself of the privilege of conducting activities in North Carolina through his alleged conduct with Faveo.

    C.    BeoCare has not established a prima facie showing that Smith purposefully availed himself of the privilege of conducting activities in North Carolina, thus Smith does not have sufficient minimum contacts with North Carolina to establish specific jurisdiction

"If, and only if, [a court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [it] move on to a consideration of prongs two and three." Prometheus Grp. Enterprises, LLC v. Viziya Corp., No. 5:14-CV-32-BO, 2014 WL 3854812, at *3 (E.D.N.C. Aug. 5, 2014) (quoting Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir.2009)). Since BeoCare has not made a prima facie showing that Smith established minimum contacts with North Carolina via the conspiracy theory of personal jurisdiction nor via Smith's own actions targeted at the forum state, BeoCare has failed to satisfy the first prong of the specific jurisdiction test. Therefore, this Court does not have specific jurisdiction over Smith and his motion to dismiss should be granted.

    D.    BeoCare is not entitled to jurisdictional discovery of Mr. Smith

District courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." *Mylan Labs*, 2 F.3d at 64. "When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery. *Carefirst*, 33 F.3d at 402. Since BeoCare has only offered speculation or conclusory assertions as to Smith's contacts in North Carolina, the Court is within its discretion in denying jurisdictional discovery. Therefore, BeoCare is not entitled to jurisdictional discovery of Mr. Smith.

**IT IS, THEREFORE, ORDERED THAT:**

    (1) The Court denies Alliance Labs' Motion to Dismiss (Doc. 78);

    (2) The Court grants William F. Smith's Motion to Dismiss (Doc. 91); and

    (3) The Court denies BeoCare's request to take Jurisdictional Discovery of William F. Smith.

Signed: August 18, 2015

Richard L. Voorhees
United States District Judge